IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

|  |  |  |
|---|---|---|
| LAQUILLA M. MITCHELL | * | |
| Plaintiff | * | |
| VS. | * | NO: 5:06CV00133 SWW |
| ARKANSAS BOARD OF CORRECTION and ARKANSAS DEPARTMENT OF CORRECTION | * | |
| Defendants | * | |

## ORDER

Plaintiff LaQuilla M. Mitchell ("Mitchell") brings this employment discrimination action against the Arkansas Board of Correction and the Arkansas Department of Correction. Before the Court is Defendants' motion for summary judgment (docket entries #7, #8, #9), Mitchell's response (docket entries #10, #11, #15), and Defendants' reply (docket entry #12). After careful consideration, and for the reasons that follow, summary judgment will be entered in Defendants' favor, and this action will be dismissed with prejudice.

**I**.

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). As a prerequisite to summary judgment, a moving party must demonstrate "an absence of evidence to support the non-moving party's case." *Celotex Corp. v.*

1

*Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has properly supported its motion for summary judgment, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The non-moving party may not rest on mere allegations or denials but must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 587 (quoting Fed. R. Civ. P. 56(e)). "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 401 (8th Cir. 1995).

## II.

Unless otherwise noted, the following facts are undisputed and taken from the parties' statements filed pursuant to Local Rule 56.1.[1] Mitchell, who is black, began her employment with the Arkansas Department of Correction ("ADC") on August 5, 2002, working as a document examiner in the personnel office at the Tucker Unit. In late July 2004, Sue Guirl ("Guirl"), an assistant warden, met with Mitchell and Mitchell's supervisor, and informed them that confidential information had been disseminated throughout the Tucker Unit by someone working in the

---

[1]Local Rule 56.1 provides that a party moving for summary judgment must submit a statement of the material facts as to which it contends there is no genuine issue to be tried, and the non-moving party must file a responsive statement of the material facts as to which it contends a genuine issue exists to be tried. "All material facts set forth in the statement filed by the moving party . . . shall be deemed admitted unless controverted by the statement filed by the non-moving party . . . ." Local Rule 56.1(c).

personnel office.² *See* docket entry #8, Ex. #1 (hereinafter "Guirl Aff."), ¶¶ 7,8 and Ex. A.

Sometime during the summer of 2004, a "count room" position became available at the Tucker Unit. In September 2004, Guirl assigned Mitchell to the count room position, even though Mitchell had not requested a job change.

On October 15, 2004, Mitchell filed an internal grievance, alleging that she had been involuntarily transferred to the count room based on her race. Mitchell's internal grievance was denied, and on November 19, 2004, she filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC"), claiming that Guirl had transferred her to the count room position because of her race. *See* docket entry # 8, Ex. # 4. On November 29, 2004, the EEOC dismissed Mitchell's discrimination charge and issued her a notice of suit rights.

In early July 2005, Mitchell asked Guirl for permission to visit Adrian Patillo ("Patillo"), an inmate incarcerated at the Ouachita River Unit of the ADC. Mitchell told Guirl that Patillo was the son of a church member. Pursuant to ADC policy in place when Mitchell submitted her request to visit Patillo, ADC employees could not visit inmates other than their immediate family members unless they received approval from a warden or assistant warden. Guirl Aff., ¶ 27. Guirl denied Mitchell's request.

Later in July, Mitchell submitted a visitation request to the Ouachita River Unit, seeking permission to visit Patillo, stating that Patillo was "a friend of the family." *See* Guirl Aff., Ex. B. On August 11, 2005, Mitchell received a call from the Ouachita River Unit's visitation clerk, who

---

²By affidavit, Guirl testifies that sometime before June 2004, she learned that test answers from ADC "promotional examinations" were disseminated, along with interview scores of individuals who had applied for open positions. Docket entry #8, Ex. #1, ¶ 7. Guirl also testifies that she concluded that Mitchell was responsible for information leaks from the personnel office. *Id*., ¶ 18.

3

told Mitchell she had not received permission from a warden or assistant warden granting her request to visit Patillo. Additionally, the clerk notified Guirl that Mitchell's daughter, Quianna Mitchell, had submitted requests to visit Patillo and that Quianna Mitchell stated in her visitation request that she was Patillo's girlfriend and the mother of his children. *See* Guirl Aff., ¶ 29, Ex. B.

On August 19, 2005, Guirl terminated Mitchell's employment for the stated reason that she provided false or incomplete information on her visitation request. Mitchell filed a second discrimination charge with the EEOC on September 19, 2005, claiming that she had been discharged in retaliation for filing her first discrimination charge on November 19, 2004.

On May 22, 2006, Mitchell commenced this action pursuant to 42 U.S.C. § 1981, Title VII of the 1964 Civil Rights Act, as amended by the Civil Rights Act of 1991, and the Arkansas Civil Rights Act, claiming that Defendants discriminated against her based on race by transferring her to the count room in September 2004 and terminating her employment in August 2005. She also claims that she was terminated in retaliation for filing an EEOC charge in November 2004.

**III.**

Defendants present several arguments, which are dispositive of each claim presented by Mitchell. First, Defendants assert that Mitchell's involuntary transfer claim brought under Title VII is time-barred. Once an employee receives a right-to-sue letter from the EEOC, he or she has ninety days in which to file suit. 42 U.S.C. § 2000e-5(f)(1). The failure to file suit within ninety days of receiving a right-to-sue letter bars a claim based upon acts asserted in the underlying discrimination charge. *See Spears v. Missouri Dept. of Corrections and Human Resources*, 210 F.3d 850, 852 (8th Cir., 2000). It is undisputed that Mitchell failed to file suit regarding her involuntary transfer claim within 90 days after the EEOC issued her right to sue notice on November 29, 2004. Accordingly,

4

the Court agrees that Mitchell's involuntary transfer claim cannot proceed under Title VII.

Second, Defendants assert that they are immunized from any claim by Mitchell brought under 42 U.S.C. § 1981 and the Arkansas Civil Rights Act. The Court agrees. Sovereign immunity, also known as Eleventh Amendment immunity, shields States and state entities considered arms of the State from suit in federal court unless Congress has abrogated the state's immunity or the state consents to suit or waives its immunity. *See Edleman v. Jordan,* 415 U.S. 651, 663 (1974); *Murphy v. Arkansas*, 127 F.3d 750, 754 (1997).

Here, Defendants are sovereign state agencies and arms of the state of Arkansas. Further, the State has not consented to suit or waived its immunity, and Congress did not abrogate state sovereign immunity when it enacted § 1981. *See Singletary v. Missouri Dept. of Corrections,* 423 F.3d 886, 890 (8th Cir. 2005); *see also* Ark. Code Ann. § 16-123-104(stating that nothing in the Arkansas Civil Rights Act of 1993 shall be construed to waive the sovereign immunity of the state of Arkansas).

Third, Defendants assert that Mitchell failed to exhaust her administrative remedies under Title VII with respect to her claim that Defendants terminated her employment based on her race. Under Title VII's exhaustion requirement, a claimant must give notice of all claims of discrimination in the administrative complaint. A plaintiff "may seek relief for any discrimination that grows out of or is like or reasonably related to the substance of the allegations in the administrative charge." *Nichols v. American Nat'l Ins. Co.*, 154 F.3d 875, 886-87 (8th Cir. 1998). "The breadth of the civil suit is, therefore, as broad as the scope of any investigation that reasonably could have been expected to result from the initial charge of discrimination." *Stuart v. General Motors Corp.*, 217 F.3d 621, 631 (8th Cir. 2000) (citation omitted).

Mitchell's second discrimination charge, filed after her termination, alleges only that she was discharged in retaliation for filing her first discrimination charge on November 19, 2004. *See* docket entry #8, Ex. #6. It is well established that retaliation claims are not reasonably related to discrimination claims. *Russell v. TG Missouri Corp.*, 340 F.3d 735, 748 (8th Cir. 2003). Accordingly, the Court agrees that Mitchell's discriminatory discharge claim brought under Title VII is barred for failure to exhaust administrative remedies.

Fourth, and finally, Defendants argue that Mitchell's remaining claim–that Defendants terminated her employment in retaliation for protected activity–must fail because the uncontradicted evidence shows that she was terminated for a legitimate reason.

Because Mitchell provides no direct evidence of a retaliatory motive, her claim is properly analyzed according to the burden-shifting framework of *McDonnell-Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973). Accordingly, the initial burden is on Mitchell to establish a prima facie case, consisting of evidence "(1) that . . . she engaged in statutorily protected activity; (2) an adverse employment action was taken against . . . her; and (3) a causal connection exists between the two events." *Stewart v. Independent School Dist. No. 196,* 2007 WL 1029327, (8th Cir. April 8, 2007)(quoting *Green v. Franklin Nat'l Bank*, 459 F.3d 903, 914 (8th Cir. 2006)). If Mitchell establishes a prima facie case, the burden shifts to Defendants to show a non-retaliatory reason for her discharge. *Id*. If Defendants meet their burden of production, the burden returns to Mitchell who must present evidence that (1) creates a question of fact as to whether Defendants' proffered reason is pretextual and (2) creates a reasonable inference that Defendants acted in retaliation. *Id.* (quoting *Logan v. Liberty Healthcare Corp.,* 416 F.3d 877, 880 (8th Cir.2005)(quoting *Smith v. Allen Health Sys., Inc.,* 302 F.3d 827, 833 (8th Cir.2002)).

For the purpose of review, the Court will presume the existence of a prima facie case. Defendants have asserted a legitimate, non-retaliatory reason for discharging Mitchell: Guirl concluded that Mitchell intentionally provided incomplete and misleading information in her application to visit inmate Patillo. In her affidavit, Guirl explains: "I considered that Mitchell's identification of the father of her grandchildren as a "family friend" or the "son of a church member" was incomplete and misleading. Because of the potential security risks involved in having employees who are friends of inmates . . ., it is important to have complete information about the relationship." Guirl Aff., ¶ 33.

Mitchell's response to Defendants' proffered reason is that "Warden Guirl failed to provide evidence that Ms. Mitchell intentionally concealed a material fact or ever violated ADC policy regarding visitation of inmates by employees." Docket entry #11, at 7. She also argues that Guirl "failed to provide evidence that Mr. Patillo is indeed the father of Ms. Mitchell's two grandchildren . . . " *Id*., at 8.

Defendants' burden does not require them to persuade the Court that Mitchell intentionally provided incomplete information or that Patillo is the father of Mitchell's grandchildren; they need only come forward with admissible evidence, which if believed by trier of fact, would support a finding that unlawful retaliation was not the cause of Mitchell's discharge. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 254-55 (1981). Defendants have met this burden with Guirl's testimony that she believed that Mitchell intentionally provided false and misleading information. Mitchell offers no evidence whatsoever that Guirl's explanation is pretext for retaliation. Accordingly, no triable issues exist in this case.

**IV**.

For the reasons stated, Defendants' motion for summary judgment (docket entry #7) is GRANTED. Pursuant to the judgment entered together with this order, this action is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED THIS 12TH DAY OF APRIL, 2007.

/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE